UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ford Motor Company,

    Plaintiff,

v.

Ghreiwati Auto, et al.,

    Defendants.
                               /

Case No. 12-14313

Honorable Nancy G. Edmunds

## OPINION AND ORDER DENYING DEFENDANT GHREIWATI AUTO'S MOTION FOR RECONSIDERATION [37]

Before the Court is Defendant Ghreiwati Auto's motion for reconsideration of the Court's November 7, 2013 order granting Plaintiff Ford Motor Company's motion for summary judgment and dismissing Auto's case against it.. (Dkt. 37.)

Pursuant to Rule 7.1(h) of the Local Rules for the Eastern District of Michigan, a party may file a motion for reconsideration within fourteen days after a court issues an order to which the party objects. Although a court has the discretion to grant such a motion, it generally will not grant a motion for reconsideration that "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h). To persuade a court to grant the motion, the movant "must not only demonstrate a palpable defect by which the court and the parties . . . have been misled but also show that correcting the defect will result in a different disposition of the case. *Id.*

Auto devotes much of its argument to arguing semantics of the Court's opinion and parses the Court's sentences to support its own position. Regardless of the words that the Court used, the Court's holding remains the same--the 2011 Executive Order rendered

performance of the GIDSSA illegal and that rendering permitted Ford to terminate the GIDSSA.

Auto argues that it does not seek damages for Ford's failure to perform the GIDSSA, but rather "damages for investments and performance by Auto prior to the entry of the 2011 EO." (Auto's Mot. at 6.) Auto also argues that it's performance before the 2011 EO was based not only on the GIDSSA but also on the Letter of Understanding (LOU), "which was separate and distinct from the GIDSSA and never merged." (*Id.* at 6-7.)

The Court is not persuaded by Auto's reframing of the issue. Auto claims that it is requesting damages for its performance and investment prior to the GIDSSA, contemplated by the LOU. (Auto's Mot. at 6.) Auto states that Ford required it to build at least six facilities in Syria. (*Id.* at 14.) Auto asserts that Ford's requirements were designed to "enhance Ford's brand image and to increase Ford's volume of sales throughout Syria." (*Id.*) Auto also takes issue with the fact that it did not have a chance to conduct discovery. Auto claims that "[d]iscovery would have demonstrated that Ford's brand image was enhanced and sales volume increased enormously when compared to the dealer before Auto became the Ford dealer in Syria. Auto would be able to demonstrate, through discovery, that from the time Auto replaced the prior dealer and before the 2011 EO was entered, Ford obtained a windfall at Auto's expense. Auto is not seeking damages for acts or performance that was illegal." (Auto's Mot. at 15.) (emphases removed.) Auto also maintains that the Court has misapprehended a critical fact. (Auto's Mot. at 9.) Auto states that, "[a]lthough Auto is a Syrian company, there is no evidence that an award of damages for services and performance of the agreed duties in its

relationship with Ford occurring BEFORE the 2011 EO was entered will result in either services or money going back into Syria." (*Id.*)

The Court has already addressed Auto's arguments in its order and the Court does not alter its decision: the Court cannot permit recovery, under any theory, that would allow a benefit to inure to Syria, including to a Syrian company, as Auto is, seeking equitable relief for the lost-investment of buildings in Syria.[1]

The Court held that "[e]very cost of the GIDSSA and investment made pursuant to the LOU was part of a contract. The executive order renders the GIDSSA illegal, therefore Ford cannot perform it and the Court cannot order any relief, such as equitable relief, that only stems from the contract and the parties contemplated in the contract." (Order at 25-26.) The Court also held that "the 2011 executive order's purpose is to cut off ties with

---

[1] Auto argues that General License No. 2, allows it to file suit and entitles it to damages. The Court does not agree. General License No 2. provides:

Authorizing Provision of Certain Legal Services with Respect to Syria
With a special license, the provision permits the "[t]he provision of legal advice and counseling on the requirements of and compliance with the laws of the United States or any jurisdiction within the United States, provided that such advice and counseling are not provided to facilitate transactions in violations of the Orders.]"

General License No. 2 does not, as Auto suggest, allow Syrian entities to bring lawsuits and to seek special licenses to collect damages after they have been awarded. General License No. 2 permits filing suits, but says nothing about the merits of the suits or the award of damages. In fact, the license specifically states that the rendering of legal advice still cannot facilitate any transaction that would violate the executive orders, including the 2011 Executive Order at issue.

*available at:*
http://www.treasury.gov/resource-center/sanctions/Programs/Documents/syria_gl2.pdf

Syria, including economic ties and the flow of services and specifically money to Syria."

(*Id.* at 24.)

Auto does not present any new arguments that the Court has not ruled on. Nor has Auto convinced the Court that its order has a palpable defect requiring reconsideration.

The Court therefore DENIES Auto's motion for reconsideration.

So ordered.

                          s/Nancy G. Edmunds
                          Nancy G. Edmunds
                          United States District Judge

Dated: December 10, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 10, 2013, by electronic and/or ordinary mail.

                          s/Johnetta M. Curry-Williams
                          Case Manager
                          Acting in the Absence of Carol A. Hemeyer